JOHN BENNINGTON *vs.* JOHN PARKIN'S Adm'r.

A promise by an administrator will revive a debt barred by limitation.
Surety in an administration bond is a witness in an action against the administrator, where there is no suggestion of a devastavit.

CASE. Pleas, non-assumpsit, payment and discount, and the act of limitations; issues.

Bennington and Parkin were both Englishmen. Bennington emigrated to this country in 1819, and Parkin accompanied him to Liverpool, from which port he sailed. He had a sum of £400 deposited in the Burlington banking house, drawing an interest of 5 per cent. On embarking he placed the certificate of deposit in Parkin's hands, to be delivered to a certain Wm. Robson, with directions to let the money remain in bank until he should write to Robson for it. He also sent by Parkin a check to enable Robson to draw the money when he should write to him for it. Parkin, instead of delivering the certificate and check to Robson, drew the money out of bank. He also afterwards, came to this country and died, leaving a widow the present deft., who is administratrix. After the death of her husband Mrs. Parkin returned to England, where the plff. followed her, and obtained from Parkin's executors in England, payment of £100 in part of his claim. Mrs. Parkin returned to America; the plff. followed shortly after, and now brought this suit for the balance. There had been repeated acknowledgments of the debt in Parkin's lifetime, and he always promised payment. In 1820 Parkin gave Bennington a letter to Richard Lovel in England, directing Lovel to deliver Bennington the money and securities which were left in his hands to pay the £400, as per account sent from Liverpool by his brother Wm. Parkin. He died

in April 1826. After his death Mrs. Parkin wrote to the executors in England to pay Bennington, but they had not funds beyond the £100, which they paid. In May 1830, Mrs. Parkin entered into a reference with Bennington. She agreed before the referees to pay the balance of £300, but refused to pay any interest. The referees could not agree on a report. This suit was brought in May 1830.

*Bayard* for deft. moved a nonsuit, on the ground that the plff. had himself shown a case barred by the act of limitations.

The old limitation act of 1792, 2 *Del. Laws* 1033, and not that of 1829, applies to this case. The latter repeals the former law "except so far as shall concern any action, cause of action or matter which now is or on or before the 1st day of September next shall be barred according to the form or effect of the aforesaid acts or sections, or either of them:" 7 *Del. Laws* 271; *Digest* 397. Before September 1829 this action was barred; and it cannot be revived by the promise of the administratrix. It was decided in the case of *Sykes* vs. *Cooper's Ex'r.* in Kent county, that the admission of an administrator, could not take a case out of the statute, and such has beenthe uniform decisions of our courts.

*Rogers* for plff.

This is purely a case of *trust* to which the act of limitations does not apply. The check was placed in Parkin's hands in trust, to be delivered to Wm. Robson. It is a case too of express trust admitted by Parkin.

But the law of 1829 and not that of 1792, applies to this case. This suit was commenced in 1830. The rule that a promise by an administrator would not take a case out of the act of limitations was founded in the peculiar wording of the act of 1792. It is different from the English law, and contrary to what was understood to be the law here before the passing of that act. But the act of 1829 is different, and as we contend restores the law to what it was before. The effect of the old act in this respect was only incidental; its repeal must leave the law as it stood before.

*Bayard,* in reply.

Where a party sues in a court of law he must be bound by the rules of law. Courts of law know nothing about trusts as such. If this be a case of trust the remedy is in equity and not here. Denies the application of the law of 1829.

*By the Court.*—It has heretofore been decided, under the existing laws of the state, that the promise of an administrator would not take a case out of the statute of limitations. This decision was founded on a construction of the 5th section of the act of 1792, which prohibits an administrator from paying a debt barred by limitation, the courts held that it would be an evasion of this section to allow the promise of an administrator, to revive a debt which he could not legally pay. That law is repealed; and we apprehend that as the law now stands, the promise of an administrator may take a case out of the statute. A promise of this administratrix has been proved since the repeal of that act, and the question is what is the effect of that promise at the time it is made? It is of the same force as if

made by the intestate himself. Thus, whether the act of 1792 or of 1829 applies to this case as it regards the limitation of action it is totally immaterial, if the general law gives to the promise of an administratrix the effect of reviving a debt. Being of opinion that it has this effect we refuse the nonsuit.

Whereupon an exception was prayed and granted.

The deft. then went on with his case and called Christopher Bainton; who was objected to, he being the surety of the deft. in her administration bond.

*Rogers.*—There is no plea of pléne administravit, and if there be a recovery in this case, this witness is personally responsible as surety whether there be assets or not. If the assets have been wasted he will undoubtedly be liable. *Phil. Evid.* 49; *3 Com. Law Rep.* 139, 235.

*Bayard.*—The administratrix herself would be liable for any recovery in this action, whether there be assets or not, but not so the surety, unless a devastavit be shown. The court will not presume a devastavit. This is not like the case of special bail—the witness cannot be affected by the result of this suit. *7 Term Rep.* 6.

*The Court.*—The witness must be sworn. He is not directly interested in the event of this suit, nor will a decision here against the deft. fix any liability on the part of the surety. He is only bound for the application of the assets received. Whether they be applied to this claim or that, is of no importance to him. The question of a devastavit is not to be decided in this case. It is true, that the verdict in this cause for plff. would fix the administratrix to the amount, whether there be assets or not, there being no plea of plene administravit. It amounts to an admission of assets on her part; but it does not preclude the surety; and, in an action on the administration bond, he may dispute the assets. The rule is that the witness must be interested in the event of the suit or in the record; that is, where the record may be given in evidence in another suit either for or against him. Otherwise he is a *competent* witness.

*Judge Robinson* charged the jury:

First. That the plff.'s. action was not barred by limitation. Second. That if the certificate of deposit was placed in Parkin's hands to deliver to Robson and he failed to do so, it was a breach of trust; and, if he drew the money, he was liable to the plff. in this action. Third. That the delay or negligence of Bennington to present the order given to him in 1820 by Parkin on Richard Lovel, was not a bar to this suit as there were no funds in Lovel's hands, and the claim had been ratified by subsequent promises. That was not a bill of exchange, nor partook of any of the qualities of a bill of exchange. It was a mere letter of advice, but available as an acknowledgment of the debt. Fourth. That the interest and damages were in the discretion of the jury.

The plff. had a verdict for $2,645 16.

*Rogers*, for plff.
*J. A. Bayard*, for deft.   ☞ *Vide post, page*